**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JAMES JOE HANSELL,<br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)   CAUSE NO.: 2:17-CV-117-JEM<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff James Joe Hansell on March 16, 2017, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 17], filed by Plaintiff on December 8, 2017. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for benefits or further proceedings. On January 22, 2018, the Commissioner filed a response, and on February 2, 2018, Plaintiff filed a reply.

**I.    Procedural Background**

On July 2, 2013, Plaintiff filed an application for benefits alleging that he became disabled on December 9, 1998. Plaintiff's application was denied initially and upon reconsideration. On May 20, 2015, Administrative Law Judge ("ALJ") Janice Bruning held a video hearing at which Plaintiff, with an attorney representative, and a vocational expert testified. On December 17, 2015, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since June 30, 2002.[1]

3. The claimant has the following severe impairments: learning disorder, borderline intellectual functioning, affective disorder, and anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is able to understand, remember, and carry out simple, routine tasks, and perform the same tasks on a regular basis; and perform work involving no public contact and no more than occasional contact with co-workers and supervisors. Additionally, the claimant is able to perform work involving no hourly quotas, but he is capable of work that is measured by what is completed by the end of a workday; and he would benefit by having a supervisor check on him twice a day (once in the morning and once in the afternoon).

6. The claimant has no past relevant work.

7. The claimant was born on December 9, 1980 and was 18 years old, defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

---

[1] Although the alleged onset date was December 9, 1998, the ALJ found that the claimant had acquired sufficient coverage to remain insured through June 30, 2002, and needed to establish disability on or before that date to be entitled to benefits.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 9, 1998, through the date of the decision.

The Appeals Council denied Plaintiff's request for review and denied his request to reopen the decision, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but

whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III.     Analysis

Plaintiff argues that the ALJ erred in evaluating Plaintiff's RFC by failing to provide a specific explanation for the mental limitations she found. Plaintiff also argues that the ALJ failed to properly assess Plaintiff's subjective complaints, and failed to properly evaluate statements from third-party, non-medical sources. Defendant argues that the ALJ properly assessed Plaintiff's limitations, the subjective complaints, and the evidence.

In assessing a claimant's RFC, the ALJ must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8, 1996 WL 374184 (July 2, 1996) at *7. The discussion must establish a logical bridge between the evidence and the conclusion. *See O'Connor-Spinner*, 627 F.3d at 618; *Briscoe*, 425 F.3d at 352 (remanding where the ALJ "did not explain how he arrived at these [RFC] conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision").

Plaintiff argues that the ALJ failed to properly evaluate his limitations in concentration, persistence, and pace. The ALJ found that Plaintiff has "moderate difficulties" in concentration, persistence, and pace, and found that he could "carry out simple, routine tasks, and perform the same tasks on a regular basis," but did not otherwise explain how she incorporated the limitations into the RFC. The Seventh Circuit has repeatedly held that limiting a claimant to simple, routine or repetitive tasks is not sufficient to account for his difficulties in concentration, persistence, or pace. *See Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (concluding that limitations to sedentary and light unskilled work did not "address[] the impact of the mental limitations . . . which . . . limited [the plaintiff]'s ability to maintain regular work attendance, to carry out instructions, and to deal with the stresses of full-time employment"); *Stewart v. Astrue*,

5

561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (limitation to unskilled work did not account for limitations in concentration, pace, and mood swings); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) (concluding that a limitation of "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" was inadequate to take into account the claimant's limitations). The ALJ erred by failing to address Plaintiff's difficulties in concentration, persistence, and pace beyond prescribing simple and routine tasks.

Plaintiff also argues that the ALJ did not sufficiently justify the limitations that she did find. The ALJ concluded that Plaintiff could work at a job if a supervisor checked on him once in the morning and once in the afternoon, and could work a job with daily quotas, but not hourly ones, but did not demonstrate how she arrived at these totals. The ALJ gave "some weight" to psychological consultant Kenneth Neville, who reported that Plaintiff "would need occasional redirection to complete tasks," but appeared to simply assume that twice-daily checkins would suffice as "occasional redirection." Defendant cites to several points in the record that reflect positively on Plaintiff's abilities as evidence that additional limitations may not have been appropriate, but what the ALJ needed to do was justify the limitations she *did* prescribe. Defendant cites 20 C.F.R. §§ 404.1546(c) and 416.946(c) to argue that the ALJ was entitled to create her own RFC even though it was not specifically dictated by the medical evidence, because "the responsibility for assessing a claimant's RFC lies squarely within the ALJ's province." While the ALJ is certainly "responsible" for the assessment, she must provide a basis

6

for each specific limitation. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (remanding where ALJ "failed to lay a foundation" for the finding that claimant could be off task for 10 percent of the day).

Plaintiff also argues that the ALJ erred when it found the claimant's self-reported allegations were "not entirely credible," in part because he missed doctor's appointments and declined to take medication. When failure to comply with medical treatment recommendations is used as a factor in determining credibility, an ALJ is required make a determination about whether the lack of treatment is justified and develop the record accordingly. *See* SSR 96-7p[2], 1996 WL 374186 (July 2, 1996) at *7; *Shauger*, 675 F.3d at 696 ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

In this case, the ALJ concluded that Plaintiff missing appointments and declining to take medication "suggests that his physical issues are not bothersome enough for the claimant to seek treatment" except to obtain benefits. The ALJ noted that while Plaintiff claimed to be disabled beginning in 1998, "there is no medical evidence going back that far"; that Plaintiff had missed numerous medical appointments, at one point missing 16 in a row with a psychiatrist; and that he told another doctor that he "had not seen a doctor in over 15 years." The ALJ erred by failing to

---

[2] Although SSR 96-7p has been superseded by an updated interpretation, SSR 16-3p, 2017 WL 5180304 (October 25, 2017), the Court applies the former interpretation because the latter was not in effect at the time of the ALJ's decision. SSR 16-3p at *1.

"explore the . . . reasons" for the interruptions in care, and jumping to a negative inference. *See Craft*, 539 F.3d at 679.

Finally, Plaintiff argues that the ALJ failed to properly evaluate statements from third-party non-medical sources, Lavena Roark and Randy Roark, who have known Plaintiff for over ten years. The ALJ gave "no weight" to the statements "because they are not based on professional, medical knowledge of the claimant's impairments, and because the issue of disability is reserved to the Commissioner of the Social Security Administration." An ALJ must consider non-medical sources based on the same factors as medical sources, including the nature and length of the relationship with the claimant and the quality of the evidence that the source provides. *See* 20 C.F.R. §§ 404.1527(c),(f)(1) (listing factors required to consider "opinions from non-medical sources").

Here, the ALJ afforded the Roarks' statements no weight because they were not based on "professional, medical knowledge." Although the ALJ went on to state that "[the Roarks'] assessments are not consistent with the medical evidence of record," Defendant states that they "largely mirror what Plaintiff had stated in his own function report and in his testimony" (citations omitted). In either case, alluding to inconsistency in conclusory fashion was insufficient to dismiss the Roarks' statements, precisely because those statements can add insight that the claimant or medical sources may not have. *See* SSR 06-3p, 2006 WL 2329939, at *2 (August 9, 2006) ("these opinions may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."). The ALJ erred when it afforded them no weight simply because they were not from medical sources and did not mirror the medical opinions.

On remand, the ALJ is instructed to draw a logical bridge from the evidence as it actually appears in the record to her conclusions about Plaintiff's RFC, and must thoroughly address the medical evidence in the record, including properly weighing Plaintiff's testimony and the statements of third parties in accordance with the regulations. She is also reminded of the need to fully review all of the medical evidence in the record and to obtain additional information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)).

## V.     Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 13], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 14th day of August, 2018.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc:     All counsel of record